IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAPOLEON GRAVES, | : | CIVIL ACTION NO. **1:CV-07-0849** |
| Petitioner | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| RONNIE HOLT[1], | : | |
| Respondent | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

Petitioner, Napoleon Graves, formerly an inmate at the FCI-Schuylkill, Pennsylvania, filed a Petition for Writ of Habeas Corpus on May 9, 2007, pursuant to 28 U.S.C. § 2241. **(Doc. 1).**[2] Petitioner attached a Memorandum of Law to his Habeas Petition along with Exhibits. We refer to Petitioner's Memorandum as Doc. 1A herein. Petitioner is no longer incarcerated at FCI-Schuylkill as of March 13, 2008, and he now resides at his home located in

---

[1]Respondent Holt is the Warden at FCI-Schuylkill. As Petitioner states (Doc. 1A, p. 2), since Holt has custody of Petitioner, he is the proper Respondent. *See* 28 U.S.C. § 2242 & § 2243. *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

[2]Petitioner styles his Habeas Petition as being under § 2241. (Doc. 1). The Third Circuit has held that a challenge to the validity or execution of a D.C. Superior Court sentence, such as Petitioner's sentence, even if Petitioner is incarcerated in a federal prison, is a challenge to a state sentence and must proceed under 28 U.S.C. § 2254, and not § 2241. *See DeVaughn v. Dodrill*, Appeal No. 03-4162 (3d Cir. August 23, 2005), slip op. p. 3 (citations omitted) (Non-precedential). However, in our case, Petitioner Graves is challenging the United States Parole Commission's revocation of his parole, and the execution of his state sentence by federal parole authorities. Thus, Petitioner may proceed under § 2241. *See Parra v. USPC*, 2006 WL 3000965, * 2 (W.D. Pa.).

Woodbridge, Virginia. (Doc. 9).[3]

Petitioner essentially challenges the January 9, 2007 decision affirming the revocation of his parole by the United States Parole Commission ("USPC" or "Commission") claiming that he was denied his due process rights with respect to his parole revocation. (Doc. 1A, p. 1). Petitioner claims that his due process rights were violated since two adverse witnesses were not produced at his revocation hearing, namely Gladys Graves (Petitioner's wife) and Carlos Howard (Petitioner's stepson), and he claims that his appointed counsel, Vincent Haskell, was ineffective for failing to adequately investigate and introduce exculpatory statements made by the complaining witnesses (Petitioner's wife and stepson) who gave statements to the police. (Doc. 1, p. 6). Petitioner claims that since his wife, his accuser, who provided police with the initial statements regarding his conduct relied upon by the USPC to revoke Petitioner's parole, was not present at his revocation hearing, he was not able to confront his accuser. Petitioner claims that his own counsel told both his wife and Mr. Howard that their presence was not required at the revocation hearing. (Doc. 1A, p. 6 and Ex. D).

Petitioner filed an *in forma pauperis* Motion. (Doc. 2). On May 14, 2007, the Court issued a Show Cause Order, directed Respondent to respond to the Habeas Petition, and granted Petitioner's *in forma pauperis* request. (Doc. 4). On June 4, 2007, Respondent filed his Response to the Habeas Petition with Exhibits. (Doc. 6). Petitioner filed his Traverse on June 15, 2007. (Doc. 7).

---

[3]The record indicates that Woodbridge, Virginia, is Petitioner's residence. (Doc. 6, Ex. 4, p. 6).

As relief, Petitioner requests this Court to reverse the decision of the USPC revoking his parole. (Doc. 1A, p. 18).  As stated, Petitioner is no longer incarcerated as of March 13, 2008, and his Habeas Petition may now be moot.   Also, Respondent argues that Petitioner has failed to exhaust his Administrative remedies with respect to his present habeas claims and that his Petition should be dismissed.  Respondent notes that he has not responded to the merits of Petitioner's present claims since he is relying upon the failure to exhaust argument.  However, Respondent requests additional time to address the merits of Petitioner's claims if the Court finds that Petitioner exhausted his claims.  (Doc. 6, p. 9, n. 1).

Since Respondent's Response and attached Exhibits thoroughly detail the factual background of this case, we shall not repeat it.  (Doc. 6, pp. 2-6).  Suffice to say, that Petitioner was sentenced in the District of Columbia ("D.C.") Superior Court to 12 years confinement for his May 16, 1989 attempted distribution of cocaine criminal convictions, along with an aggregate 690 days for carrying a dangerous weapon, attempted possession of cocaine, and simple assault.  (Doc. 6, Ex. 1 and Ex. 3).[4]

On October 19, 2000, Petitioner was paroled from his DC sentence, and he was to remain under parole supervision until July 1, 2008.  (*Id*., Ex. 2).  On April 12, 2006, the USPC issued a Warrant for Petitioner charging him with violating the conditions of his parole by reckless driving, refusing to take a breathalyser and threats.  (*Id*., Ex. 3).  Subsequently, the DC supervision officer advised the USPC that Petitioner was arrested on June 16, 2006, for being a

---

[4]Respondent 's Ex. 1 identifies the D.C. Case Numbers of the offenses of which Petitioner  was convicted as F15466-88, F1546688-E, F5468-84-D, F5468-84-E, and F9428-89-D. (Doc. 6, Ex. 1).

3

felon in possession of a firearm in Virginia. (*Id.*, Ex. 4).  Subsequently, the USPC supplemented its April 12, 2006 Warrant against Petitioner and added the charges of assault with a dangerous weapon and felon in possession of a firearm.  (*Id.*, Ex. 5).

On July 22, 2006, the USPC's Warrant was executed and Petitioner was given a probable cause hearing on August 6, 2006.  The USPC found probable cause that Petitioner violated the conditions of his parole.  (*Id.*, Ex. 6).  With respect to the third parole violation charge, *i.e.* assault with a dangerous weapon (gun) and felon in possession of a firearm, the USPC listed Petitioner's wife and stepson as adverse witnesses requested by Petitioner.  (*Id.*, Ex. 6, p. 5).

On September 28, 2006, the USPC conducted a parole revocation hearing.  Since Petitioner had requested his wife Gladys and stepson (Carlos Howard) as adverse witnesses with respect to the third charge, the USPC subpoenaed these persons.  (*Id.*, Ex. 7).  Petitioner's counsel for the revocation hearing was Vincent Haskell.  The USPC indicated in its Hearing Summary as follows:

> Carlos Howard a[nd] Gladis Graves Howard, the subject's wife are adverse witnesses relative to Charge No. 3.  Neither of these individuals appeared and there is no good cause found for their non appearance.  They changed their story with local authorities which resulted in non prosecution of this case per the police officer at today's hearing.  It is not likely that these individuals will appear if re-subpoenaed.

(Doc. 6, Ex. 7, p. 2).

A reviewing  hearing examiner did not agree with the hearing examiner's "no finding" recommendation regarding Charge 3 due to the failure of the subpoenaed witnesses, *i.e.*

4

Petitioner's wife and stepson, to appear. The reviewing examiner found that the Prince William County, Virginia, police officer's (Headrick) testimony and the June 16, 2006 police report were sufficient evidence to support a finding that Petitioner possessed a firearm (.357 magnum) in violation of his parole conditions. The detailed rationale of the reviewing examiner is stated on page 6 of the Hearing Summary (Doc. 6, Ex. 7, p. 6) as well at pages 4-5 of Respondent's Response. (Doc. 6). We shall not repeat this explanation.

The USPC agreed with the finding of the reviewing hearing examiner and found that Petitioner violated his conditions of parole by possessing a firearm. The USPC issued a Notice of Action on October 11, 2006, and ordered Petitioner's parole revoked and ordered him to serve 24 months imprisonment until June 15, 2008, before he could be re-paroled. (Doc. 6, Ex. 8). The Notice of Action also stated that Petitioner would be scheduled for a review hearing in March 2008, and as stated, Petitioner has indicated that he was re-paroled on March 13, 2008. (Doc. 9). The Notice of Action also stated that the USPC decision was appealable and that the appeal must be sent to the USPC within thirty (30) days of the date the Notice was sent. (Doc. 6, Ex. 8, p. 2).

Petitioner filed a timely appeal of the USPC's October 11, 2006 decision to the USPC National Appeals Board ("NAB"). (Doc. 6, Ex. 9). Petitioner claimed that Police Officer Headrick lied about the June 16, 2006 incident and that the officer's testimony was based on hearsay evidence. Petitioner claimed that Officer Headrick had threatened his family, *i.e.* his wife and stepson, and that the information they gave the officer was false. Petitioner claimed that the officer failed to have the gun dusted for fingerprints and that the officer lied. (Doc. 6,

Ex. 9, pp. 2-3). Petitioner claimed that the statements his family members gave the officer were hearsay and were gathered through intimidation of them. (*Id*.). Petitioner claimed that the initial statements his wife and stepson gave police about the June 16, 2006 incident to police were unsworn and unreliable, and they constituted hearsay. He claimed that the officer was lying at his revocation hearing. Petitioner also attached exhibits to his appeal in the nature of the Affidavits of his wife and stepson recanting their statements made to police on June 16, 2006. In the affidavits, Petitioner's wife and stepson averred that their initial statements given to police were not accurate.

**II. Discussion.**

We disagree with Respondent that Petitioner has failed to exhaust his Administrative remedies with the USPC regarding his present due process claim that the UPSC relied upon hearsay statements from his wife and stepson in the June 16, 2006 police report. We agree with Respondent that Petitioner did not exhaust his administrative remedies regarding his due process claim about the failure of these witnesses to testify at his revocation hearing. We also agree with Respondent that Petitioner did not exhaust his claim that his revocation counsel (Haskell) was ineffective for failing to adequately investigate and introduce exculpatory statements his wife and stepson gave to counsel about the June 16, 2006 incident. (*See* Doc. 1A, p. 6 and Doc. 6, Ex. 9). Indeed, the record reveals that the failure of Petitioner's wife and stepson to appear at his revocation hearing despite being subpoenaed by the USPC as requested by Petitioner, was since Petitioner's own counsel advised them they were not required for the hearing, and he told them not to attend the hearing. (Doc. 1, Ex. D, and Doc.

6

1A, p. 6).[5]

*A. Exhaustion of BOP Administrative Remedies*

Respondent states (Doc. 6, pp. 6-8) that Petitioner has not exhausted his administrative remedies with respect to his present habeas claims, namely, his due process claim regarding the hearsay evidence and the failure of his wife and stepson to appear at his revocation hearing, and his ineffective counsel claim. Petitioner states in his Traverse that he did appeal the USPC's decision and raised the issue that it relied upon hearsay. We agree with Petitioner that he raised the hearsay claim in his appeal but he did not raise his claim that he was denied his right to confront his accusers at the revocation hearing since his wife and stepson did not appear. Petitioner states that the police report contained the initial statements of his wife and stepson which were used, in part, at his revocation hearing to find that he violated his parole conditions. However, Petitioner states that since these witnesses later recanted their initial statements they gave to police about the June 16, 2006 incident, these witnesses should have been present at his revocation hearing so that the hearing examiner could determine the reliability of their initial statements to police in light of their later recanted version of their statements.

---

[5]Petitioner claims in his Habeas Petition that his counsel was ineffective for not introducing, at the revocation hearing, the exculpatory statements of his wife and stepson recanting their initial statements to police about the June 16, 2006 incident. However, Petitioner's counsel advised Petitioner's wife and stepson not to appear at the hearing (Doc. 1A, p. 6), and then Petitioner's counsel objected to consideration of the parole violation Charge 3 based on the failure of Petitioner's family members to appear. (Doc. 6, Ex. 7, p. 2). As Respondent states (Doc. 6, p. 8), Petitioner should not be granted a new revocation hearing based on the creation of a due process claim by Petitioner and his counsel.

The record is clear that Petitioner appealed the USPC's October 11, 2006 decision to the National Appeals Board. (Doc. 6, Ex. 10). We agree with Respondent (Doc. 6, pp. 6-7) that generally a writ of habeas corpus will not issue if the Petitioner has not exhausted his Administrative remedies. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted). If a prisoner does not exhaust available remedies, the petition should be dismissed. *Arias v. United States Parole Commission*, 648 F.2d 196, 199 (3d Cir. 1981); *Mayberry v. Pettiford*, 2003 WL 21635306 (5th Cir.); and *Lindsay v. Williamson*, Civil No. 07-808, M.D. Pa., (7-26-07 Memo, J. Caldwell), slip op. p. 4; *Adams v. Holt*, 2006 WL 2129034, *4 (M.D. Pa.).[6]  As stated, we find that Petitioner exhausted his present hearsay claim

---

[6]In *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689 (E.D. Ky. 2004), the Court stated as follows:

> Federal prisoners are required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam). Only after a federal prisoner seeking § 2241 relief has sought and exhausted administrative remedies pursuant to 28 C.F.R. § 542.10-16 (1997) (and not pursuant to PLRA provisions § 1997e(a)) may the prisoner then seek § 2241 judicial review. *United States v. Oglesby*, 52 Fed.Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir. 2002) (citing *United States v. Wilson*, 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996)). The exhaustion of administrative remedies procedure required of a § 2241 petitioner is not a statutory (PLRA) requirement, but instead, is a wholly judicially created requirement. *See Wesley v. Lamanna,* 27 Fed. Appx. 438, 2001 WL 14150759 (6th Cir. 2001). The judicially imposed non-statutory exhaustion of Bureau of Prisons administrative remedies for a federal prisoner seeking to bring a 28 U.S.C. § 2241 petition is set out at 28 C.F.R. §§ 542.10 - .16 (1987). Section 542.13(a) demands that an inmate informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem,

before the NAB, but not his claim about the failure of his wife and stepson to appear at his hearing.

Even if Petitioner did exhaust both of his due process claims about the failure of his wife and stepson to appear at his revocation hearing and the USPC's reliance upon hearsay evidence (Doc. 7, pp. 2-3), we find that the USPC National Appeals Board properly considered these claims and that there was a rational basis in the record to support Petitioner's parole revocation.

The NAB stated:

> In response to your claim that the Commission relied upon erroneous information for its decision because you claim that its decision was based upon the hearsay testimony of Officer Headrick, the Board finds that the information that the Commission considered was not inaccurate.  Unlike a criminal trial, the Commission may rely on reliable hearsay at a parole revocation hearing.  Police officers are generally reliable sources and Officer Headrick's testimony at your revocation hearing was specific and detailed concerning the offense conduct. In *Taylor v. U.S. Parole Comm'n,* 734 F.2d 1152 (6th Cir. 1984), the Commission relied upon a single piece of hearsay evidence, *i.e.*, a probation officer's summary of a police report, to find by the preponderance of the evidence that the parolee committed a crime while on parole.  In your case, the hearsay testimony of the police officer was corroborated by, and consistent with, the police report.

---

before filing a request for an administrative remedy (BP-8 ½). If the inmate cannot informally resolve his complaint, then he may file a formal written complaint (BP-9) "within fifteen (15) calendar days of the date on which the basis of the complaint occurred." *See* § 542.13(b).  If the inmate is not satisfied with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) that decision to the Office of General Counsel. *See* § 542.15.

(Doc. 6, Ex. 10).

The NAB further stated:

> The Commission considered the official version of the incident, which included the original statements made by your wife and Carlos Howard to police, and the testimony of officer Headrick. The reviewing hearing examiner reviewed the differing accounts of what occurred and found that your statement that you were unaware of the presence of the firearm in your residence was not credible and that statements made by others that you possessed the weapon supported a finding that you were in constructive possession of a firearm. The statements that have now been submitted by your wife and her son, who failed to appear at your revocation hearing, after the fact, provide yet another version of the incident. Based upon the inconsistencies in the statements of your wife and her son, the Board finds that these statements are not more credible than the version provided by police based upon statements made immediately after the incident and the testimony of Officer Headrick.

(*Id.*).

As the Court stated in *Nelson v. Williamson*, 2007 WL 4592330, *3 (M.D. Pa.):

> The function of judicial review on a petition for writ of habeas corpus in the parole context is to determine whether the Commission abused its discretion. *Furnari v. Warden,* 218 F.3d 250, 254 (3d Cir.2000). Review is limited to whether there is a rational basis in the record for the conclusions embodied in the Parole Commission's statement of reasons, which should include whether the criteria, appropriate, rational and consistent with its enabling statutes, has been followed so that its decision is not arbitrary and capricious, nor based on impermissible considerations. *Id.* (citing *Zannino v. Arnold,* 531 F.2d 687, 690-91 (3d Cir.1976)). The court is not empowered to substitute its judgment for that of the Parole Commission unless the Commission's exercise of discretion represents an egregious departure from rational decision-making. *See Butler v. U.S. Parole Commission,* 570 F.Supp. 67, 77 (M.D.Pa.1983).

The record shows that there was a rational basis to support the finding that Petitioner Groves possessed a firearm on June 16, 2006. (Doc. 6, Ex. 7, p. 4).

In *Ascenzi v. Erickson*, 2008 WL 191486, * 4 (M.D. Pa), the Court stated:

> The due process requirements for a parole revocation differ from those afforded a defendant in a criminal prosecution. *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations .... Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on the observance of special parole restrictions." *Id.* at 481. While not entitled to the "full panoply of rights," a parolee is entitled to certain procedural protections, such as notice of the violations, disclosure of the evidence against him, an opportunity to be heard and to present witnesses and evidence, the right to confront and cross-examine witnesses, a "neutral and detached" hearing, and a written statement by the fact-finders as to the evidence relied on and the reasons for revoking parole. *Id.,* at 481-89. The Due Process Clause, however, is not offended when parole violations are found "by a judge under a preponderance of the evidence standard, [and] not by a jury beyond a reasonable doubt." *United States v. Dees,* 467 F.3d 847, 854-855 (3d Cir.2006). Parolees in revocation proceedings also face a greater range of evidence that may be admissible against them, no right to a jury, and no right against self-incrimination. *United States v. Loy,* 237 F.3d 251 (3d Cir.2001) (citations omitted); *see also Lee v. Pennsylvania Bd. of Prob. & Parole,* 885 A.2d 634, 639-640 (Pa.Cmwlth.2005) ( "Generally, the rules of evidence are not strictly applied in proceedings before the Board." )

Thus, even if the UPSC relied upon hearsay evidence, as Petitioner Groves claims, as the *Ascenzi* Court stated, "parolees in revocation proceedings also face a greater range of evidence that may be admissible against them ... ." *Id.*

The Court in *Hurt v. Holenick*, 2005 WL 1653175, * 5 (M.D. Pa), stated that the Court's standard of review regarding a habeas petition challenging a UPSC' parole revocation decision is limited to "whether there is a rational basis in the record for the Commissioner's conclusions." We find that standard has been satisfied in our Petitioner's case by the testimony of officer

11

Headrick and the police report on the date of the June 16, 2006 incident as described by the reviewing hearing examiner, Doc. 6, Ex. 7, p. 6.   Even if hearsay evidence was used by the hearing examiner, as the *Hurt* Court stated, "Hearsay is admissible in parole proceedings." *Id*. (Citation omitted).  As did the Petitioner in *Hurt*, our Petitioner "has argued the evidence to the contrary [of Officer Headrick's testimony and report] in the record, and has made arguments that the officer's testimony should not be accepted, but the Commission was not bound to accept the contrary evidence [the recanting September 2006 statements of Petitioner's wife and his stepson] or Petitioner's argument."   *Id.*

We do not find that Petitioner exhausted his ineffective counsel claim to the NAB.  In fact, Petitioner concedes that "the record indisputably indicates that Petitioner's claim of ineffective assistance of counsel was not raised on appellate review."  (Doc. 7,pp. 3-4). However, Petitioner argues that the facts which showed that his counsel was ineffective were not available until after the appellate process regarding his parole revocation decision was concluded.  (*Id*., p. 4).  Petitioner's habeas claim about his counsel's ineffectiveness is that Haskell did not adequately investigate and introduce exculpatory statements at the revocation hearing from Petitioner's wife and stepson, *i.e.* the recanting of the initial statements Petitioner's wife and stepson gave to police on June 16, 2006, immediately after the incident in question. Petitioner relies upon the April 12, 2007 affidavits of his wife and stepson, Ex. D, Doc.1, to support his claim that he was not aware of his counsel's ineffectiveness until well after the his appeal of his revocation had concluded, *i.e.* after the NAB's January 9, 2007 decision.  We disagree with Petitioner and find that the record shows that Petitioner was aware, or should

12

have been aware, of his claim about his counsel's failure to introduce exculpatory statements which he was given by Petitioner's wife and stepson, since Petitioner knew that his wife and his stepson did not appear at his September 28, 2006 revocation hearing despite the USPC's subpoenas for their appearance.  In fact, Petitioner's counsel objected at Petitioner's revocation hearing to consideration of Charge 3 since the two adverse witnesses to parole revocation Charge 3, with first hand knowledge of the June 16, 2006 incident (*i.e.* Petitioner's wife and stepson), did not appear for the revocation hearing and no good cause for their failure to appear existed.  (Doc. 6, Ex. 7, p. 2).  Counsel also argued that it was unlikely that these witnesses would appear if they were re-subpoenaed.  (*Id.*).  The hearing examiner did consider Charge 3 and relied upon the police officer's testimony.  (*Id.*, pp. 3-4).  Thus, when Petitioner filed his appeal to the NAB, he clearly knew about his ineffective assistance of counsel claim.[7]

Further, the record is clear that the USPC NAB did in fact consider the later so-called exculpatory statements of Petitioner's wife and stepson and their recanted version of the June 16, 2006 incident. The NAB found that based on the inconsistencies of the later statements of Petitioner's wife and stepson about the incident, the initial statements of Petitioner's family members to police immediately after the incident were more credible than their later statements.  (Doc. 6, Ex. 10).  Further, the recanting Affidavits of Petitioner's wife and stepson were dated September 26, 2006 (Doc. 1, Ex. C), two days prior to his revocation hearing, and as stated, these statements were considered by the NAB.

---

[7]In any event, as noted above, we find that Petitioner should not benefit from an attempt to create error with respect to the USPC's decision.

Thus, even if Petitioner has exhausted his habeas claims, we see no reason to require Respondent to now respond to the merits of these claims in light of the present record which shows that the USPC had a rational basis to support its parole revocation decision.

*B. Mootness of Habeas Petition*

As stated, Petitioner was re-paroled by the USPC on March 13, 2008. (Doc. 9). Petitioner is no longer in custody and his request for relief, namely, that this Court reverse the USPC's decision to revoke his parole, appears to be moot.[8] The UPSC's October 11, 2006 Notice of Action (Doc. 6, Ex. 8, p. 2) indicated that Petitioner would be scheduled for a parole review hearing during March 2008, and it seems that he was granted parole as of March 13, 2008. (Doc. 9). Thus, Petitioner is no longer in custody.

As stated, it is undisputed that on March 13, 2008, Petitioner was re-paroled from FCI-Schuylkill and he was released from confinement. Petitioner now resides at his home in Woodbridge, Virginia. In his Habeas Petition, Petitioner sought this Court reverse the USPC's decision to revoke his parole. (Doc. 1A, p. 18). This Petition is now moot. (Doc. 9). Since Petitioner has now been ordered released from federal custody on March 13, 2008, the present Habeas Corpus Petition is moot. Even if the UPSC's decision to revoke Petitioner's parole is reversed, as Petitioner solely requests in his Habeas Petition, the granting of Petitioner's Petition would have no effect on his present custody status. We thus find that the present Habeas Corpus Petition is moot and should be dismissed. (Doc. 9).

---

[8]Since the Response of Respondent and the Traverse of Petitioner (Docs. 6 and 7, respectively) were both filed prior to Petitioner's release from confinement, neither party addressed the mootness issue.

In *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court found that a petitioner's release in and of itself did not render moot his habeas petition. Rather, the Court stated that "[t]he more substantial question ... is whether petitioner's subsequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, § 2, of the Constitution." *Id*. at 7. In the present case, Petitioner originally sought habeas relief seeking reversal of the USPC's parole revocation decision and essentially release from federal custody. Petitioner claimed that his due process rights and his right to effective assistance of counsel were violated during the revocation hearing. Thus, Petitioner basically claimed he was being unlawfully detained. The question arises now as to whether Petitioner's claims are moot since he has now been ordered released by the USPC. In *Spencer*, the Court stated that "[t]he parties must continue to have a personal stake in the outcome of the lawsuit. This means that, throughout the litigation, the Plaintiff must have suffered, or be threatened with, an actual injury traceable to the Defendant and likely to be redressed by a favorable judicial decision." *Id*. (Citations omitted). Because Petitioner is no longer being detained, and since he was found to be a suitable parolee for release from custody, he was released by the USPC from custody and his release cannot be simply revoked at any time and for any reason. Rather, it would seem as though Petitioner is under conditions of release contained in an Order of Supervision. (*See e.g.* Doc. 6, Ex. 2).

In the case of *Razzoli v. FCI-Allenwood,* 200 Fed. Appx. 166, 169 (3d Cir. 2006)(Non-Precedential), the Court stated:

> Razzoli's claims that his release on parole has been illegally delayed are moot. The function of habeas corpus is to provide release from

15

> illegal custody. *See Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); 28 U.S.C. § 2243. Through the passage of time Razzoli has been released on parole, thereby obtaining the relief that he sought through habeas. *See Lane v. Williams,* 455 U.S. 624, 633, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982). Accordingly, his claims that his September 2004 discipline was illegal retaliation and that the Parole Commission unlawfully denied his previous release plans are moot.(footnote omitted).

Accordingly, we find that Petitioner Graves' release from federal custody truly constitutes an end to his detention. Petitioner is no longer threatened with any actual injury traceable to the Respondent and likely to be redressed by a favorable decision by this Court. Thus, there is no longer any case or controversy presented by Petitioner's Habeas Corpus Petition. We therefore conclude that Petitioner's Habeas Corpus Petition should be dismissed as moot. *See Cox v. McCarthy*, 829 F.2d 800, 802-03 (9th Cir.1987) (A petition for habeas corpus becomes moot when a prisoner is released on parole before the court addresses the merits where being paroled leaves no relief possible).

We find that Petitioner will not still suffer from an actual injury from the Respondent now that he has been ordered released from federal custody, and we find that there is no longer a case or controversy presented. The Petitioner's claims are moot since he has been ordered released by the USPC and is no longer being detained, and there are no longer any collateral consequences as a result of the USPC's parole revocation decision. *See Williams v. Sherman*, 214 Fed. Appx. 264 (3d Cir. 2007); *Hinton v. Miner*, 138 Fed. Appx. 484 (3d Cir. 2005); and *Ruiz v. Smith*, Civil No. 05-2412, M.D. Pa. (4-5-07 Order, J. Nealon) (Petitioner's release from BOP custody rendered habeas petition moot even though Petitioner was placed on supervised release).

In the Third Circuit case of *Chong v. INS*, 264 F. 3d 378 (3d Cir. 2001), the Court dealt with the issue as to whether an alien's § 2241 habeas petition was moot when she was no longer in INS custody and deported from the United States. The Court found sufficient collateral consequences flowed from the alien's appeal of the BIA's order of removal, since the removal order prevented the alien, as an aggravated felon, from reentering the United States for ten (10) years. *Id*. at 384-86. Thus, if the BIA's decision were reversed by the Court in *Chong,* the Attorney General could exercise his discretion to grant withholding of removal and allow the alien to reenter the United States. *Id*. at 386. In *Chong*, the Court also discussed the four (4) exceptions to the mootness doctrine, which allow judicial review. These exceptions are:

> (1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

*Id*. at 384. (citation omitted).

We do not find that any exceptions to the mootness doctrine apply in this case. Because the Petitioner's habeas corpus claims are now moot, we shall recommend that his Habeas Petition be dismissed.

**III. Recommendation**.

Based on the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus be dismissed.

                                **s/ Thomas M. Blewitt**
                                **THOMAS M. BLEWITT**
                                **United States Magistrate Judge**

**Dated: March 25, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAPOLEON GRAVES, | : | CIVIL ACTION NO. **1:CV-07-0849** |
| Petitioner | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| RONNIE HOLT[9], | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 25, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however,

---

[9]Respondent Holt is the Warden at FCI-Schuykill.   As Petitioner states (Doc. 1A, p. 2), since he has custody of Petitioner, he is the proper Respondent. *See* 28 U.S.C. § 2242 & § 2243.  *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                        **s/ Thomas M. Blewitt**
                                                        **THOMAS M. BLEWITT**
                                                        **United States Magistrate Judge**

**Dated: March 25, 2008**